Shawn A. Womack, Justice concurring in part and dissenting in part. I agree with majority’s analysis regarding Wilson’s standing and the issue of mootness as it applies to the Central Arkansas Planning and Development District (CAPDD). I write separately because I respectfully disagree with the majority’s analysis regarding the constitutionality of the challenged acts under article 5, § 29, the constitutionality under the 1 ^Fourteenth Amendment to the Arkansas Constitution regarding local or special legislation, and mootness as it applies to the separate state defendants. I. Mootness I disagree with the majority’s decision that this case falls within one of the exceptions to mootness. This Court has recognized two exceptions to the mootness doctrine: (1) issues that are capable of repetition, yet evade review, and (2) issues that raise considerations of substantial public interest which, if addressed, would prevent future litigation. Keep Our Dollars in Indep. Cty. v. Mitchell, 2017 Ark. 154, at 10, 518 S.W.3d 64, 70. It is undisputed that the appropriated funds had already been transferred from the state to CAPDD prior to Wilson filing suit. The majority states that the case is not moot because the record indicates that CAPDD still had unspent funds in its accounts when the suit was heard below. Additionally, Wilson conceded during oral argument that the only argument he raised regarding mootness was the fact that CAPDD still had money in its accounts at the time of the hearing. Accordingly, I agree with Wilson and the majority on the issue of mootness as to CAPDD. However, as to the separate state defendants, this suit was moot on its face at the time it was filed. Being facially moot, we must then analyze whether it falls into one of the two categories of exceptions listed above. Each of the two exceptions has two prongs. The first exception being (a) that the issues are capable of repetition and (b) that they evade review. While I acknowledge that the issues are capable of repetition, this case fails as to part (b) of the first exception in that these issues are not doomed to evade review if not addressed herein. Mr. Wilson, an attorney and former legislator, has demonstrated a notable proficiency in challenging acts of |14the General Assembly and getting them before this court for review. The fact that he brought the current challenge in an untimely manner by filing suit after the state had already distributed the appropriated funds and rendering moot the case against the state does not preclude him from instituting a new and then timely challenge in the future should similar appropriations be passed and warrant judicial review. Lastly, I would also point out that Wilson could have brought his suit before the challenged funds were transferred to CAPDD, which is another factor that should weigh against our decision to apply an exception to the mootness doctrine. The second exception to mootness likewise has two prongs: (a) that there be a substantial public interest in the issues being considered and (b) that addressing such issues, despite their being otherwise moot, would prevent future litigation. As in the first exception, only one of the two prongs of the second exception has been met here. Unquestionably, there is substantial public interest in the assurance that public funds from tax revenue and other sources accrued to the state are appropriated and managed in accordance with the law. However, addressing this issue will not prevent future litigation, and given the history on this issue with these parties it is more likely to open the door to additional litigation in the future. I would therefore hold that the ease is moot as it applies to the separate state defendants. 11. Article 5, § 29: Distinctive Purpose Wilson acknowledges that he bears a stringent burden in this case. Every act of the General Assembly carries a strong presumption of its constitutionality. Landers v. Stone, 2016 Ark. 272, at 6, 496 S.W.3d 370, 375; Wilson v, Weiss (Wilson II), 370 Ark. 205, 211, 258 S.W.3d 351, 365 (2007). If it is possible to construe a statute as constitutional, we must do so, Landers, 2016 Ark. 272, at 6, 496 S.W.3d at 375. Any doubt regarding the constitutionality of a statute must be resolved in favor of its constitutionality. Wilson II, 370 Ark. at 211, 258 S.W.3d at 355. Article 5, section 29 of the Arkansas Constitution provides that “no money shall be drawn from the treasury except in pursuance of specific appropriation made by law, the purpose of which shall be distinctly stated in the bill.” We have interpreted this provision to require each appropriation to state “how” the funds will be spent instead of explaining “why” they were appropriated. Wilson II, 370 Ark. at 213, 258 S.W.3d at 356. The purpose must also be stated in the bill and we will not look outside the bill to provide one. Id, While I believe this court in Wilson II overstepped its role by adding qualifications for appropriations that exceeded the requirements of the constitution, and I would join Justice Wood in overturning it, I will nevertheless analyze the issue in that context because it is currently applicable law and the majority herein has chosen not to specifically overturn it. The majority focuses only on section 1 of the challenged acts that appropriate funds from the General Improvement Fund “for grants to planning and development districts.” While none of the acts contain a section distinctly labeled as “purpose,” section 3 of each of the challenged acts addresses the “how” question with the following language: No contract may be awarded nor obligations otherwise incurred in relation to the project or projects described herein in excess of the State Treasury funds actually available therefor as provided by law. Provided, however, that the institutions and agencies listed herein shall have the authority to accept and use grants and donations including Federal funds, and to use its unobligated cash income or funds, or both available to it, for the purpose of supplementing 11flthe State Treasury funds for financing the entire costs of the project or projects enumerated herein. Act of March 244, 2015, No. 622, § 3, 2015 Ark. Acts 2521, 2522 (emphasis added).[12] It is a fundamental canon of construction that when interpreting or construing a statute the court may consider the text as a whole to derive its meaning or purpose. Dolan v. U.S. Postal Serv., 546 U.S. 481, 486, 126 S.Ct. 1252, 163 L.Ed.2d 1079 (2006); Antonin Scalia & Bryan A. Garner, Reading Law: the Interpretation of Legal Texts 167 (2012). When looking at the entire Act, the two sections can be read together to suggest that the General Assembly appropriated funds to planning and development districts to be distributed as grants to finance the cost of its individual projects. In Hooker v. Parkin, we upheld a grant of funds to the Highway Department for maintenance, operation, and construction of road systems but deferred to the department to determine how to allocate the funds to each project. 235 Ark. 218, 223, 357 S.W.2d 534, 538 (1962). We noted that the only foreseeable alternative would be for the General Assembly to proscribe by law each road to be built, bridge to be repaired, materials to be used, .et cetera, which the constitution clearly did not require. Id. The rationale in Hooker applies equally in these circumstances where the General Assembly wishes to provide funds to regional economic development districts for grant funding on various projects. Finally, the majority has chosen not to reach the issue of where the challenged acts were local or special legislation in violation of the Fourteenth Amendment to the Arkansas Constitution. I would hold that'they were clearly not local or special legislation and would [17uphold each of them on that basis. This court has a duty to uphold acts of the General Assembly when possible, and any doubt must., be resolved in favor of an act’s constitutionality. I would therefore hold that the appropriations are constitutional. I respectfully concur in part and dissent in part. Wood, J., joins in part. . See also Acts 514, 551, 612, 619, 654, 786, and 818 of 2015.